IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

NORA H. COLEMAN,

    Plaintiff,

v.                                           Civil Action No. 5:12CV151
                                                                   (STAMP)

HOUSING AUTHORITY OF THE
CITY OF WEIRTON and
GEORGE VARGO, individually,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   Procedural History

On September 18, 2012, the plaintiff, Nora H. Coleman, filed the underlying employment discrimination action in the Circuit Court of Hancock County, West Virginia. On October 9, 2012, the defendants, the Housing Authority of the City of Weirton ("Weirton Housing Authority") and George Vargo ("Vargo"), removed the action to this Court. The defendants then submitted to this Court a motion for partial summary judgment on the plaintiff's claims for age discrimination, race discrimination, retaliatory discharge, and outrageous conduct. The plaintiff did not respond to this motion. After consideration, this Court granted in part and denied in part the defendants' motion for partial summary judgment. That order dismissed Counts I(a), I(b), I(c), and Count V as it pertained to the plaintiff's outrageous conduct claim based on race or age discrimination. Accordingly, Counts II-IV, Counts VI-VIII, the

claims not pertaining to outrageous conduct based on age or race discrimination in Count V, and a second Count V (likely a typographical error) of the plaintiff's complaint remained.

Subsequently, on December 26, 2013, the defendants filed a motion for summary judgment to dismiss the remaining counts. The plaintiff has not filed a response to that motion. Thus, the motion is ripe for review.

## II. <u>Facts</u>

The plaintiff was hired by the co-defendant, Vargo, and began working for the Weirton Housing Authority in 1984. The plaintiff filed suit in the Circuit Court of Hancock County, West Virginia, on April 25, 2012. The action was subsequently removed to this Court based on federal question jurisdiction.

In her complaint, the plaintiff claims that she was discharged based on her race and because of her age; her discharge was retaliatory because she had complained to defendant Vargo about the misuse of the Housing Authority's funds, inappropriate treatment of clients, and inappropriate personal relationships of employees and supervisor; and that a family member of defendant Vargo was given preferential treatment over the plaintiff. Based on these allegations, the complaint sets forth nine counts (although it is only listed as eight).

As stated previously, of those nine counts, seven full counts and one partial count remain. The remaining counts are as follows:

2

Count II-hostile work environment; Count III-breach of contract; Count IV-wrongful termination; Count V-outrageous conduct not pertaining to age or race discrimination; second Count V-breach of implied covenant of good faith and fair dealing; Count VI-failure to protect; Count VII-unlawful conduct; and Count VIII-slander and libel.

## III. Applicable Law

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial ."

Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074, 112 S. Ct. 973, 117 L.Ed.2d 137 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, the plaintiff failed to respond to defendants' motion for summary judgment. However, the plaintiff's failure to file a response does not relieve the defendants from the burden imposed upon the moving party. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410 (4th Cir. 1993). The court in Custer held that while "the failure to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

## IV. Discussion

In the motion for summary judgment, the defendants argue that they are entitled to judgment as a matter of law with respect to all of the allegations remaining. For the reasons that follow, this Court finds that the defendants' motion for summary judgment should be granted.

A. Time-Barred Claims: Counts II, IV, V, VI, VII, and VIII

    1. Count II: Hostile Work Environment

The defendants contend that as to Count II, hostile work environment, the plaintiff is time-barred because the default statute of limitations under West Virginia law applies. The defendants assert that the plaintiff's hostile work environment

5

claim is a personal injury claim because in her complaint, the plaintiff claims that she suffered severe emotional distress. The defendants argue that because the default statute of limitations is two years, and the plaintiff filed this action 4.75 years after the alleged conduct occurred, she is time-barred from bringing the hostile work environment claim.

Based on the plaintiff's testimony in her deposition, no adverse employment action was taken against her after she was terminated on November 20, 2007. The plaintiff filed her complaint on April 25, 2012, over four years after she claims the adverse actions ceased. Although the defendants argue that the statute of limitations is determined by the default statute under West Virginia law, the plaintiff also asserted the West Virginia Human Rights Act ("WVHRA") in her complaint under Count II. This Court, however, finds that the statute of limitations period would still result in the claim being time-barred.

A statute of limitations commences to run when the right to sue accrues. See syl. pt. 1, Jones v. Trustees of Bethany College, 351 S.E.2d 183 (W. Va. 1986); Sansom v. Sansom, 137 S.E.2d 1, 4 (W. Va. 1964).[1] Under West Virginia Code § 55-2-12(b) (the default

---

[1]Although the plaintiff did not respond, this Court should address that she had claims pending with the United States Equal Employment Opportunity Commission ("EEOC") before bringing this case. This Court found, however, that those claims were time-barred and thus they have been dismissed. ECF No. 23. However, to ensure that all issues are covered, this Court notes that under West Virginia law, even if the statute of limitations was tolled

statute of limitations for personal injury claims), the statute of limitations runs after two years. See Conaway, 358 S.E.2d at 427. Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 427 (W. Va. 1986). Additionally, the statute of limitations on a claim under the WVHRA is two years and is only tolled for equitable reasons. Wilfong v. Chenoweth Ford, Inc., 451 S.E.2d 773, 779 (1994) (citations omitted). No equitable reasons appear to this Court, by way of the record provided in this action, for tolling the two-year statute of limitations under the WVHRA. Accordingly, under either the default statute or the WVHRA, the statute of limitations would still be two years and the plaintiff's claim would still be time-barred because she filed this action more than four years after the alleged wrongful conduct. Based on the untimely nature of the plaintiff's complaint in this case, this Court finds that the plaintiff has in fact failed to diligently bring the claim charged in Count II. Accordingly, this Court finds that Count II should be dismissed.

---

because the plaintiff's age or race discrimination action was pending before the EEOC after she was issued a notice of right to sue, that tolling "does not act to toll the statute of limitations from running on [her] other causes of action." Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 427 (W. Va. 1986). Accordingly, this Court will consider the remaining actions under the individually applicable statute of limitations for each and will not consider any tolling that may have occurred because of the EEOC proceedings.

7

2. Count IV: Wrongful Termination

The defendants argue that plaintiff's Count IV, wrongful termination, should be dismissed because the claim is time-barred by the default two-year statute of limitations under West Virginia law. Further, the defendants contend that the claim is dependent on the allegations made by the plaintiff that the defendants discriminated against the plaintiff based on age or race, and those claims have already been dismissed by this Court based on the defendants' motion for partial summary judgment.

Wrongful discharge is a tort action. Conaway, 358 S.E.2d at 427 (W. Va. 1986) (citing Harless v. First Nat'l Bank, 246 S.E.2d 270, 275 n.5 (W. Va. 1978)). Accordingly, under West Virginia Code § 55-2-12(b) (the default statute of limitations for personal injury claims), the statute of limitations runs after two years. See Conaway, 358 S.E.2d at 427. As stated previously, the plaintiff's right to bring suit began on November 20, 2007 and she filed this suit on April 25, 2012. Thus, the plaintiff's claim as to wrongful termination is time-barred under the applicable two-year statute of limitations. As such, this Court will not consider the defendants' other assertion for dismissal of this claim.

3. Count V: Outrageous Conduct

The defendants next assert that plaintiff's Count V, outrageous conduct, is also time-barred under a two-year statute of limitations pursuant to Travis v. Alcon Labs., Inc., 504 S.E.2d

419, 433 (W. Va. 1998), which sets out the applicable statute of limitations for outrageous conduct claims. In Travis, the West Virginia Supreme Court held that "in claims for intentionally or recklessly inflicted emotional distress that arise from a termination of employment, the two-year statute of limitation for personal injuries begins to run on the date of the last extreme and outrageous conduct, or threat of extreme and outrageous conduct, which precipitated the termination of employment." See also McCammon v. Oldaker, 516 S.E.2d 38, 47 (W. Va. 1999) ("[T]he two-year limitation period begins to run on the date of the last extreme and outrageous conduct."). As stated previously, this action was brought over four years after the plaintiff claims the last wrongful conduct occurred by the defendants. Thus, the plaintiff is time-barred from pursuing her outrageous conduct claim under Count V.

4. Count VI: Failure to Protect

The defendants also contend that the same default statute of limitations under West Virginia law applies to plaintiff's Count VI, failure to protect. Further, the defendants assert that there is no recognizable cause of action for failure to protect in the area of employment law in West Virginia.

The West Virginia Supreme Court has applied the default two-year statute of limitations for personal injury claims to failure to protect claims. See Merrill v. W. Va. Dep't of Health & Human

9

Res., 632 S.E.2d 307, 311 (W. Va. 2006). To reiterate, the plaintiff failed to bring this action within two years of the alleged wrongful conduct. Accordingly, this claim is also time-barred. As such, this Court declines to consider the defendants' contention that there is no recognizable cause of action for failure to protect under West Virginia employment law.

5. Count VII: Unlawful Conduct

The defendants argue that the same default statute of limitations under West Virginia law applies to the plaintiff's claim that the defendants engaged in unlawful conduct. Further, the defendants assert that this claim is redundant because the plaintiff is only claiming that the defendants acted unlawfully because of the other allegations made in the complaint. Additionally, the defendants contend that the plaintiff fails to state a claim under this allegation because there is no specific, independent cause of action for unlawful conduct described in the complaint.

This Court has not found West Virginia precedent that indicates that the default statute of limitations under West Virginia Code § 55-2-12(b) does not apply to an unlawful conduct claim. Accordingly, the applicable statute of limitations that applies to the personal injury claim alleged by the plaintiff in Count VI is two years. Thus, because the plaintiff failed to bring her claim within two years, but rather brought it after more than

four years, her claim as to unlawful conduct by the defendants is time-barred. Because this claim is time-barred, this Court declines to consider the defendants' other assertions as to the redundancy of this claim or the plaintiff's failure to state a claim under Count VI.

    6.   <u>Count VIII: Slander and Libel</u>

As to plaintiff's Count VIII, slander and libel, the defendants argue that it is time-barred by the applicable one-year statute of limitations. Additionally, the defendants assert that the plaintiff cannot bring a slander or libel claim against Vargo for statements he made to an EEOC employee who was investigating the plaintiff's claim. Further, the defendants contend that the plaintiff testified at her deposition that she was not aware of any statement made by Vargo about her but was merely speculating as to the fact that he said something about her.

"Under West Virginia law, slander . . . is simply defamation through oral means . . . [and] libel . . . is the written form of defamation . . . ." <u>Butts v. Royal Vendors, Inc.</u>, 504 S.E.2d 911, 916 (W. Va. 1998) (citation omitted). Further, West Virginia Code § 55-2-12(c) establishes a one-year limitations period for the bringing of defamation actions. <u>Padon v. Sears, Roebuck & Co.</u>, 411 S.E.2d 245, 247 (W. Va. 1991). It is unclear from the testimony given by the plaintiff in her deposition exactly when the libel and/or slander took place. The plaintiff claims that Vargo may

11

have written letters about her; that the representative from the EEOC, Roosevelt Bryant ("Bryant"), was told something adverse by Vargo; that the secretary at the Weirton Housing Authority had been told something adverse by Vargo; and an unknown woman at a bank stated that she hoped the plaintiff would win this case and that Vargo was "dirty." However, there are no specific dates given for these instances either by the plaintiff or by the defendants.

The defendants claim, however, that the last adverse employment action occurred over four years before the plaintiff filed, per the plaintiff's testimony, and that date should be used as the date which began the limitation period to bar this claim. Under West Virginia precedent, "in defamation actions the period of the statute of limitations begins to run when the fact of the defamation becomes known, or reasonably should have become known, to the plaintiff." Padon, 411 S.E.2d at 248. Thus, the one-year statute of limitation for the plaintiff's defamation claims would not have begun to run until she was made aware or should have known that Vargo had written something untruthful about her or had said something untruthful about her. It appears, however, that one of those claims would be time-barred.

First, the plaintiff's claim as to the conversation she had with Gloria Waters, the secretary at the Weirton Housing Authority when the plaintiff was terminated, occurred the day she was terminated according to the plaintiff's testimony. Accordingly,

12

that claim would be time-barred because it occurred over four years ago. As to the rest of the claims, relating to the possible slander with Bryant, the woman at the bank, and the letters allegedly written about the plaintiff by Vargo, it is unclear when these allegedly occurred and thus unclear whether or not they are time-barred by the one-year statute of limitations. However, those claims fail for other reasons.

As the defendants indicated, the plaintiff's claim regarding Bryant will not uphold an allegation of defamation because Vargo made statements to him about the plaintiff because of the official investigation conducted by the EEOC. "[T]o have a defamation claim, a plaintiff must show that false and defamatory statements were made against him, or relating to him, to a third party who did not have a reasonable right to know, and that the statements were made at least negligently on the part of the party making the statements, and resulted in injury to the plaintiff." <u>Belcher v. Wal-Mart Stores, Inc.</u>, 211 W. Va. 712, 719, 568 S.E.2d 19, 26 (2002). In this case, Bryant had a reasonable right to know what Vargo felt the plaintiff had done to support his claims in his own defense that the plaintiff was not the subject of discrimination or other wrongful conduct. Further, the West Virginia Supreme Court has held that such defamatory statements are protected when made "during the course and as part of, the judicial proceeding . . . if the matter has some relation to the proceeding." <u>Collins v. Red</u>

13

Roof Inns, Inc., 566 S.E.2d 595, 598 (W. Va. 2002) (citation omitted). Because the statements allegedly made by Vargo were made to an EEOC official who was investigating the plaintiff's claim, she cannot claim that they were defamatory. Bryant was a third party who had a reasonable right to know and thus this claim fails because the plaintiff cannot prove an essential element of a defamation claim.

As to the plaintiff's claim that a woman mentioned the case to her at a bank, that claim does not actually provide any substance for a slander claim. The plaintiff did not claim that the woman had stated that Vargo had actually said something about the plaintiff, the only claim made by the plaintiff was in regards to the fact that community members were aware of the action and had a general feeling of malaise toward Vargo. Thus, there is no evidence that any statements were made by Vargo to the woman at the bank and thus, the plaintiff cannot meet the element required for a defamation claim that the defamatory statements be made by the person against whom the defamation claim is brought.

Finally, as to the plaintiff's last claim, that Vargo "probably had someone type up letters," the plaintiff's claim also fails for not proving an element of a defamation claim. As the defendants assert, the plaintiff has not shown that false and defamatory statements were made against her. Based on the evidence provided by the record, there is no proof that letters about the

plaintiff were typed up except for the plaintiff's bare assertion that she believed that Vargo had someone type letters. Further, when asked if she knew what Vargo said specifically, she stated she did not know. As no other evidence has been provided, the plaintiff has failed to show that she meets the requirement of a defamation claim that she show that false and defamatory statements were made against her. Accordingly, this claim fails and thus, Count VIII must be dismissed.

B.  Count III: Breach of Contract

The defendants contend that plaintiff's Count III, breach of contract, should be dismissed because the plaintiff's termination did not breach a contract. To support this assertion, the defendants argue that at all times she was employed by the Weirton Housing Authority the plaintiff was an at-will employee. Further in support of this assertion, the defendants provide excerpts from the employee handbook which state that all employees are at-will and that the provisions of the handbook may be deviated from at the director's discretion. These passages are important, the defendants argue, because the handbook informed the plaintiff that her employment was at-will, that she can be discharged for any reason (because the provisions are at the director's discretion), and that nothing can alter the at-will status. Additionally, the defendants indicate that the plaintiff testified at her deposition that she was not aware of any contract that was in place, either

15

oral or otherwise, while she was employed by the Weirton Housing Authority.

The West Virginia Supreme Court set forth the following standard for cases in which an employee claimed that an employee handbook created a contractual employment relationship rather than an at-will status of employment:

> In West Virginia, the law presumes that employment is terminable at will, permitting an employer to discharge an employee for cause, for no cause, or even for wrong cause. "When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. pt. 2, Wright v. Standard Ultramarine and Color Co., 141 W. Va. 368, 90 S.E.2d 459 (1955). However, "[c]ontractual provisions relating to discharge or job security may alter the at will status of a particular employee." Syl. pt. 3, Cook v. Heck's, Inc., 176 W. Va. 368, 342 S.E.2d 453 (1986). Thus, employees sometimes argue that they have a unilateral employment contract because of what they perceive as promises of job security contained in an employee handbook.
>
> In syllabus point 6 of Cook, we recognized that "[a]n employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons." We further delineated our position on this point in Suter v. Harsco Corp., 184 W. Va. 734, 403 S.E.2d 751 (1991), in which we stated that "[a]n employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself." Id. at syl. pt. 5. We also added that "[a]n employer may protect itself . . . by providing in the employment handbook that the handbook's provisions are not exclusive." Id. at syl. pt. 4. Thus, a disclaimer clearly displayed in the handbook can preserve the at will status of the employment.

Mace v. Charleston Area Med. Ctr. Found., Inc., 188 W. Va. 57, 63, 422 S.E.2d 624, 630 (1992). The employee handbook in question

states four times, in different ways, that employment at the Weirton Housing Authority is at-will employment. Further, the employee handbook states four times that it is not a contract and that no employee or supervisor may change the terminable at-will status of an employee. Finally, the handbook also states four times that employment may be terminated with or without cause, at any time. Thus, pursuant to West Virginia law, the Weirton Housing Authority has set forth several disclaimers in its employee handbook that would preserve the at-will status of its employees. Additionally, the plaintiff's own statements made during her deposition show that she was free to quit at any time and that she could not recall any agreement that guaranteed her employment for a certain amount of time. Accordingly, because of the presumption of at-will employment, the several disclaimers made in the employee handbook, and the statements of the plaintiff made during her deposition, this Court finds that a breach of contract could not have occurred because there was not an employment contract in place between the plaintiff and the Weirton Housing Authority. The plaintiff was an at-will employee. As such, plaintiff's Count III, breach of contract, fails and must be dismissed.

C. <u>Second Count V: Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Finally, as to the plaintiff's second Count V, breach of implied covenant of good faith and fair dealing, the defendants argue that this claim should be dismissed because that type of

17

action can only be brought by an employee who was under contract. Thus, because the plaintiff was an at-will employee, she cannot bring this claim.

As the defendants indicate in their brief, West Virginia "law is well-settled: [West Virginia] do[es] not recognize the implied covenant of good faith and fair dealing in the context of an at-will employment contract." Miller v. Massachusetts Mut. Life Ins. Co., 193 W. Va. 240, 244, 455 S.E.2d 799, 803 (1995). As stated previously, the plaintiff was an at-will employee and there is no evidence that she was at any time a contract employee. Thus, the plaintiff's second Count V must be dismissed because it is supported by a claim that the plaintiff is not qualified to assert.

## V. Conclusion

Based on the analysis above, the defendants' motion for summary judgment is hereby GRANTED. It is further ORDERED that this case be DISMISSED WITH PREJUDICE and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:        January 29, 2014

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE